Once again, good morning and may it please the court. This case concerns the bounds of a government employee's First Amendment rights to freedom of speech and freedom of association. Those are two distinct rights which require two distinct modes of legal analysis. One under the Pickering line of cases for free speech and one under Elrod Branty for dissociational rights. Our claims that Mr. Mark McCaffrey's First Amendment rights were violated arise from the failure to reappoint him as a deputy in the Loudoun County Sheriff's Office after he supported the opponent of the current sheriff for the Republican nomination for sheriff. The speech that he undertook in that supporting really has three components. The first, not in any priority, he served as a delegate to the Republican convention on behalf of Sheriff Chapman's opponent. He had a yard sign supporting Sheriff Chapman's opponent and also after Sheriff Chapman was nominated, he served as an advisor to the local chapter of the police benevolent association and advising them not to endorse Sheriff Chapman. The reason why he opposed Sheriff Chapman and supported his opponent was because he believed that Sheriff Chapman was involved in bribery, abused Sheriff's Office employees, and mismanaged and engaged in malfeasance of the Sheriff's Office. Now, that's important because under Pickering, there are really three components and two of which are not in dispute here. The fact that he was making these comments as a private citizen on a matter of public concern. You've got a little threshold problem with Elrod Branty before you get to Pickering, don't you? I don't think so, Your Honor. I think that they are separate tests. But we've made clear, Judge Gregory made clear, I think, in his Bose-Larry opinion, that if the Elrod Branty finding is made against you, that the Pickering balance tips against you. Well, actually, Your Honor, that is not true in the context of this case, because this case, as I was about to say, is really a subspecies, a subset of Pickering, because it is a speech concerning government misconduct. And in numerous cases, Durham, Liverman, Cromer, Hunter v. Town of Monksville, this court has said is that when you have in the speech of a government employee Well, it was about a lot more than government misconduct. Just as a threshold matter, I don't, you know, it's nice if the precedent of the court could be kept somewhat straight and we not create all kinds of riptides and cross currents in our precedent. And we have an in-bank opinion of this court in the Jenkins case, in which the court says the court did not believe it was ever contemplated that a sheriff must attempt to implement his policies through deputies who have expressed clear opposition to him. Now, if I were an attorney reading that, I would say, well, Jenkins presents a big hurdle for me. And because here we're dealing with the same thing. You're trying to require a sheriff to attempt to implement policy through deputies who have expressed clear opposition. Well, Your Honor, I would respectfully say that you are actually missing a step in what you just said about Jenkins. First of all, let us be clear. You have to distinguish Jenkins. And I'm about to, Your Honor. You have to be able to distinguish Jenkins or you can't get anywhere. Well, actually, Your Honor, I don't think we have to distinguish Jenkins. I think it has to be read according to the way this court said it should be read. And in the Bland case, this court quite clearly said that Jenkins sent very, very mixed signals. And the court said, quote, Jenkins is best read as analyzing the duties of the particular deputies before the court. So the key threshold for Elrod Branty is whether you have a position that requires partisan affiliation and requires essentially a political approach. We completely agree with that. But Bland goes on to say that in talking about Jenkins that the key factor is that you're a sworn officer engaged in law enforcement activities that are not administrative and ministerial. That along with the statutory provisions concerning deputy sheriffs are the basis of those two decisions read together, aren't they? Well, in part, yes, I would say, Your Honor. But I think part of the problem is that if you look at the variety of cases of this court on the whole application of Elrod Branty, part of what I think you see in the law enforcement world is in the context of those cases, it sort of didn't matter that you go beyond the sworn deputies. And this is, I think, the important point here is that there is really no such thing as a Virginia deputy because sheriffs are county sheriffs. And sheriffs have the ability to control the powers that are delegated to their deputies. You're saying there's no such thing as a deputy sheriff under Virginia law? No, I'm saying, and I'm not quite saying that, I'm saying this is that you cannot compare all Virginia deputies. You can't say all the deputies in the commonwealth are the same. And the reason is because each sheriff has the- Well, but that's a losing argument for you because this whole case, he's been pumped up as some kind of super deputy. I mean, his duties are not just ministerial. They involve plea bargains and what to offer and what to accept, and they involve who to investigate, and they involve what prosecutions to undertake. Actually, that's what you just said. Those are policymaking jobs when you get to that level. He's been with the force for 20 years or what have you. Actually, Your Honor, what you just said is factually incorrect, respectfully. He has none of those powers. If I could just make my point for a second. Chief investigator or something. Yeah, but he doesn't choose what cases to investigate. He doesn't make prosecution recommendations. He can't even make a decision to arrest someone without a superior's approval, and he has to write a written operations memo to arrest someone and also to search. But the reason, if I could go back to Judge Wilkinson's- You admit that you've got to establish that your guy is not a policymaker. No, I have to first establish that partisan relationships is not required for his job. The policy, as both Brant Solaire- He's a major crime detective, and you're saying he has no say or doesn't have any judgment in question of what strategies he's going to pursue or who he's going to interview or whom he's going to prosecute? Your Honor, respectfully, judgment does not make for the kind of political requirement that Elrod Branty allows. Government employees, hundreds, thousands of government employees exercise judgment all the time. The ministerial administrative distinction does not get you to the question of the partisan divide. Sheriffs have the right, under Virginia law, to determine what kind of power is delegated to their deputies. What has been done in Loudoun County, which is perhaps the largest sheriff's office in the Commonwealth, is that- Six hundred deputies? Yes, sir. Yes. And how many were there in the Jenkins case? I don't know- That's in North Carolina. It was a small office, Your Honor, and I have- Did you look county that was? No, I don't offhand, Your Honor. And frankly, the record is very hard to find. I ended up having to go to the Library of Congress. It wasn't even in this court's archives, and so not much was available on those facts. So I'm sorry, I don't know the answer to that. But what the sheriff has done here, he has done something, and not just Sheriff Chapman, but prior sheriffs, have created a structure where they have created a clear line of demarcation between the political people and the professional- Are you talking about the general order? Yes, sir. Yes. Between the political people and the professional law enforcement people below that. It is only the sheriff's office, which includes the sheriff and two colonels who are the bureau commanders, and then the commanders of the five divisions that explicitly have policymaking authority. And then each of those- Now where's your man, Paul, in all this? Well, we have the sheriff. We have the two colonels who are the bureau commanders. Then we have majors who are the head of the divisions. My guy is in CID. Below that are captain- CID is Criminal Investigation Division. Yes, sir. Exactly. My guy is, there's a major, there is captain, there are two lieutenants, and he reports to a sergeant. He is the equivalent of maybe a private first class corporal, somewhere in that regard. That's not what the district court found at all. But the district court was incorrect, Your Honor. What was incorrect about it? The district court found that he had very significant duties here. He was, I said, McCaffrey, this is reading from the district court opinion. McCaffrey describes himself as the lead detective in complex, high-profile cases, including rape, robbery, homicide investigations. And this was McCaffrey's own description of his role, and he puffs himself up. And it says, then the district court goes on to find, correctly, because it's drawn from the complaint itself, paragraph 11 and 12 of the complaint, McCaffrey was by no means a junior deputy in the LCO, but rather someone who had served 20 years in other departments. McCaffrey had the discretion to contact directly the Commonwealth's attorney's office, medical examiner's office, and to interface with those. And he says that he's by no means a junior deputy here. But, Your Honor, that's quite true. That is not inconsistent with what I'm saying, because the point here is that having discretion. You have to show that he's a non-policy maker. No. I have to show that he's a non-political person, because lots of this. No rod carved out of exception for policy makers and confidential employees. Your Honor, if I may, I want to read a quote from Branty, because it goes right to your point. It says, in sum, the ultimate inquiry is not whether the label policy maker or confidential fits for a particular position. Rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved. And, yes, Your Honor, he was involved in important major crimes. He had to make a decision about who do we talk to, who do we investigate. Counsel, this man is an elected official. And he has a responsibility to translate that electoral mandate into the running of the office. And you can't do that with a fifth column in the shop. And when you look at the complaint here, it reads like a political sound bite. And it certainly, to come back to my friend's business about policy, this whole complaint is an attack on Chapman policies and decisions. In the complaint, he is critiquing the staffing arrangements at the office, the structure and shift, the handling of the gang intelligence unit. The budget is wrong. Absolutely, Your Honor. I don't agree with the tasers. In other words, he takes on everything over policy. Excuse me. He takes on everything with regard to the policy in the sheriff's shop. And, you know, it's hard enough to run a railroad under the best of circumstances. But when you've got somebody fundamentally opposed to what you're doing and actively working to undermine what your policies are, whether that's a U.S. attorney's office or whether it's a sheriff's office and maybe even stronger with a sheriff's office because it's an elected official, it becomes impossible to do the job. And whether you look at his own complaint, which is a political broadside over matters of policy. Can I respond? I don't want to interrupt you, Your Honor. I really didn't mean to be rude. You weren't at all. You're just a good advocate. Well, thank you. Your Honor, you know, we are actually in agreement. No. No. And one important thing is that the political fifth column, I would say in principle and having worked as a special assistant to Ed Meese when he was attorney general, I'm very aware of political fifth columns in government entities. So very sensitive to that. But I would suggest to you that you are understanding the facts wrong here. First of all, he has done he has not been a fifth column. What he did was vote in a convention, put a yard sign up, and recommended the PBA not to endorse this man. So he very discreetly expressed his reasons why he did not think that Sheriff Chapman should be the candidate again and should be elected. And that's political. That's true. But as a citizen, he has a right to have those views, and we articulated those in the complaint. But Jenkins doesn't call for the type of subtle distinctions you're talking about as I read it. As you read Jenkins and as you read Bland together, here's the holding of Jenkins. We hold newly elected or reelected sheriffs may dismiss deputies either because of party affiliation or campaign activity. That's the holding. And it seems like, you know, you want those facts may be in disagreement, but under the law, those facts don't seem to be material as I read how Jenkins and Bland decided things. But, Your Honor, I think what you're doing is we have a different factual situation there. This has to be read that you have to look at the attributes of the particular position. What the Loudoun County Sheriff's Office have put into place is a regime that actually, and this is where Judge Wilkinson, what I meant by we agree, is that it does two different things. It, first of all, very strictly limits who can be involved in policy, and those policymakers are in charge of operational units. On top of that, there is a very rigid structure. It's a paramilitary organization in which- We can return to it in rebuttal. All right, Your Honor. Thank you. Thank you. Mr. Frank Kuzenko, we'd be pleased to hear your side of it. May it please the Court. Your Honor, my name is Alex Frank Kuzenko, and I represent Sheriff Michael Chapman, the current sheriff of Loudoun County. As an initial matter, Loudoun County and the Board of Supervisors yielded their time to me. They were also defendants in the original complaint. It's clear from the district court decision that their motion to dismiss was moot once the court found that the- Did they rise and fall together then? I think so, Your Honor. Because the claims are the same. They're First Amendment state and federal claims. There's no separate contractual claim or any other state claim. But against the entities, you'd have a Monell issue. Could be different. There could be distinctions between your individual client, the sheriff, and the Loudoun County. Well, I'm not here to argue on behalf of Loudoun County, but- I'm not arguing. No, no. They ceded their time to you. They did, but to address the issues of the district court case, not any claims against them. But I think when the court found that there was no constitutional right violated- There are no issues here about that. That's right. If we were to reverse, we'd send it all back. Well, that's within the court's prerogative. But I think that- Let me ask you this. You've heard from all three of us some questions. Why don't you concentrate your argument on things you think we may have overlooked? Well, the first thing I want to point out to the court is that counsel is now arguing that the Pickering test is also applicable. First of all, we would dispute that because in the plaintiff's own complaint, if you look at J.A., page 43, it states, Mr. McCaffrey never spoke publicly about the election, nor did he in any way other campaign for Mr. Noble. So his attempt now to bring up this free speech First Amendment argument and avoid the Elton Brandy test shouldn't be accepted. Your own precedent has made clear that if you lose on the Elrod Brandy point, that weighs heavily, heavily in the Pickering balance. And I don't think we've ever reversed a case under the Pickering balance where the Elrod Brandy claim failed. And that was going to be my second point, Your Honor. Under Borsarelli, I think it's pretty clear that the- Judge Gregory's opinion in that just nails that point down. Nails it down. It would make the Elrod Brandy exception very difficult because then you would hide, as the plaintiff attempts to do in this case, behind the Pickering argument and go the free speech route. So I just wanted to point that out to the Court. What Mr. McCaffrey is trying to focus on is the word policymaker. And he's using it as a very, very narrowed- He's not a policymaker. He's an investigator. You can't investigate criminal cases on the basis of politics. No, no. You can't. So there can't be political position. There can't be a political position because you can't investigate criminal matters on the basis of politics. But Your Honor- You can't do it in this country. That's right. But- This is not a political position. Well, it is to the sense that he's representing the sheriff. He's working for the sheriff. Even under Jenkins. He's investigating, but it's not a political thing. It can't be. Well, it is when you're dealing with outside- It's not political. It is. It is political. It's not political. It can't be political. You can't have politics involved in the enforcement of the law. When you're talking about- It has to be even-handed. When you're talking about strictly investigating, I agree. But when you're talking about- The office has to stop at the courthouse door. When you're talking about- Even in Jenkins- I don't think Judge King's point is antagonistic to you because that's the point. Right. Is that it wasn't stopped at the investigative door. That's right. That it was permeating. That politics- You know, exactly right. It shouldn't. But the problem is it was permeating it all. It was permeating the investigation, the prosecution, and organization of the office, and everything else. And his own complaint. We have to read the complaint to like most favorable to the plaintiff. Absolutely. Because of 12b-6. 12b-6. And I think the court pointed out right. It reads like a campaign attack ad, quite frankly, and the motivations behind this. He was talking about the sheriff. He didn't think he was doing his job very well. I think he used the word malignant narcissist several times. He attacked the sheriff and everything, but he said that he was doing his job outside of that. There was no politics involved. That's what he said. He got excellent effectiveness reports and all that. Everybody agreed with that. He was a good investigator, and he was doing the job. And even under Jenkins- He was fired on account of politics. He wasn't fired. He was just not reappointed. Fired on account of politics, and he was not a policymaker. But he was a policymaker, Your Honor, under Jenkins. Why wouldn't the issue of whether he's a policymaker be something to litigate? Why wouldn't that be a question of fact, ultimately decided perhaps by a jury? Because when you look at the ‑‑ when you take the complaint, the four corners of the complaint, which is what the district court did, and looked at what Mr. McCaffrey himself represented that he did, lead detective, high public complex investigator of crimes, of high-level crimes. He is all that. He dealt with the Commonwealth's attorney. That has to be evenhanded without politics. It has to. I agree. And the same thing with the prosecutor. The prosecutor can't be making decisions on the basis of politics. He's not supposed to. There can't be politics involved. You're right. It's not supposed to. Politics can be involved in the election and getting the sheriff into office, but he has to run the place above politics. And when the sheriff- And so does the prosecuting attorney, the Commonwealth's attorney up there in Loudoun County. That's right. And when the sheriff has a lead investigator who- These are all these general orders that structure this thing and lay it all out, and they all say everything's above politics. There's no politics involved here. Everything's on the up and up. And when the lead investigator who publicly supports his opponent in a nasty primary- And that's what the law says. Well, that's the issue and the question of whether this Jenkins case is on point or whether it's distinguishable. And I think it's directly on point. I think even not only is it directly on point, I think the complaint in this case goes even further. Do you know where that's from, North Carolina? I don't, Your Honor. Do you know how many deputies they had? I believe it was more than 100, but I don't recall specifically. But let me just say in the Jenkins case, they were talking about a patrolman. And in the Jenkins case, the Fourth Circuit found when a patrolman is out there dealing with the public, that is policy. That is a policy. He is implementing the sheriff's policy. And the same thing as in this case, but even more so when you have a lead detective on highly public crimes- See, there is politics in law enforcement. I'm saying there's not supposed to be, and I agree with the court. But you're saying there is. I'm saying that when you have the right to make discretionary decisions, then your politics or your feelings about your boss and about his policies possibly can come into play. And when you have a paramilitary organization, that cannot be tolerated. And they don't, Judge Wilkerson mentioned the United States attorneys, but U.S. attorneys don't, the assistant U.S. attorneys don't turn over when they- But the point is- They aren't political appointees. In Borzarelli, this court affirmed prosecutors. Well, I'm talking about United States attorneys. The federal attorneys, they've changed the boss man, or the boss woman, and they've changed the supervisors. But the prosecutors, the line prosecutors, are absolutely protected from getting- I'm not sure which case you're referring to. I'm not talking about cases. I'm talking about the way things work. All right, but first of all, the analogy is not exactly correct because here you have an elected official. That's right. And he's responsible for implementing the mandate that the voters gave. And Judge King is certainly correct that law enforcement should be nonpartisan. But given this record, there's absolutely no assurance that any decision would be made by this individual in a way that would be supportive of what the sheriff was doing. Given this complaint, the political broadside against each and every aspect of the office, it was reasonable of a sheriff to believe that he would be trying to undermine him at every turn, that you have somebody who not just opposed him, but that is inverterately hostile to every step the man is taking. And that is squarely within Jenkins. I mean, we create real problems for district courts and attorneys and everybody out there who tries to follow our decisions. If we take some kind of, if we take Jenkins and try to shave it so thin, as I come back to what I said earlier, that we have riptides and cross currents and nobody knows, so we're going to litigate this jurisdiction by that jurisdiction by this jurisdiction. And, you know, there's no determinacy. If Jenkins can be distinguished in this case, then, you know, every precedent is up for grabs in every later decision. Your Honor, not only does this case fall squarely on Jenkins, I would argue that the facts and allegations in the complaint go well beyond what was going on in Jenkins. In Jenkins, you were dealing with patrolmen. In this case, we have a lead detective. Wasn't Jenkins a 12B6 case? It was, yes. And Borzarelli was, too? That's right. And there's a reason for that, too, because to drag the elected official through discovery process, which is a continuing political smear, which I would argue that's the underlying motivation of this case, is completely inappropriate, and it really has an impact on the sheriff and his ability to run his organization. Let me talk about two other issues that are raised. One is what we can consider in this. You objected to the consideration of the general orders in the handbook. Is your position on that required for the district court to be sustained? In other words, if we disagree with you and say those are properly in the record, how does that change our decision, or does it? I don't think it does, Your Honor. The reason we objected to it was I think it was clear from the district court's opinion and order that he did the Elrod Brantee analysis and that he never even got to the partial summary judgment. He said he denied it. He could have said it was moot, but he said he denied it, which is what the plaintiff asserts is the basis for putting that stuff in. But it was never part of the original complaint. And the other issue that is – They quote the general orders in the complaint. They quote it, yeah. It's quoted in the complaint. One general order, yes, Your Honor. But your point is that even considering that evidence, if you look at the allegations of the complaint and match them up with or compare them to Jenkins and Bland, that it would still fall within the exception. Absolutely. What about the post-termination conduct? That's not something that is mentioned in any other Fourth Circuit cases. Is that relevant at all? I don't think so. And I think if the plaintiff was pursuing a claim for those actions, number one, he hasn't asserted a cause of action that would be entitled to remedy as a result of that. That evidence that strikes me might be the basis of a state law claim for interference with contract or something like that, but those aren't pled, are they? Judge Quattlebaum, you hit it right on the head. If there was some type of interference of contract, or in Virginia we have Bauman claims, if they wanted to bring claims for, say, whistleblower or something like that, then certainly he could have asserted those claims. But these claims are strictly First Amendment claims, state and federal. We argue that there is no state First Amendment claim, but even if there was it would be subsumed by the federal cause of action. One follow-up on that is that the plaintiff's position is that we are talking with Elrod Branty about an exception to the First Amendment. And if you're going to have an exception, you ought to keep it confined to that exception. And that exception applies to perhaps termination of people based on election activity, but it doesn't apply if you do more than that, such as go beyond termination to this post-termination conduct. What's your response to that argument? Well, Your Honor, if that's the case, there's no case law which supports the cause of action for actions beyond that. Again, I think you'd have to assert something like an interference action or some type of other action to address that particular, if you want to call it, conduct. But I think when you assert just the first of the – That's not part of what's before us. That's right, Your Honor. Elrod Branty. Yeah. And I don't think that – The evidence of intent. I'm sorry, Your Honor? The evidence of intent. Right. It would be evidence of intent. Well, intent. I mean, intent – the intent here was the political patronage issue. The intent was to fire this guy on the basis of politics. That's right. That's what they alleged. That's right. And that's why we're here. The intent was to fire him on the basis of politics. And it's not fired. He was not appointed. There is – The facts have to be looked at like most favorable to the plaintiff. Absolutely. Not as to your side. Absolutely. That's right. So we don't look at it – And when you look at those allegations – Your point is that Jenkins was a 12B6 case. And so was – where's your line? And also that Jenkins involved somebody who was far less influentially located in the hierarchy than this person. He was just a street patrolman. Patrolman versus a lead investigator of high-profile crimes.  Where he was trying to puff himself up as to his importance. The district court drew from his complaint in making his findings. That's right. But the district court wasn't entitled to make any findings. Well, it didn't make findings. It took its – The district court can't make findings on the Sunbridge case. He accepted his allegations as true. He can't make findings. There's no record. I agree. He accepted the allegations in the complaint as true. I'm not suggesting that findings were made. I'm suggesting that the court viewed the four corners of the complaint to base its opinion. He reiterated what he said in his complaint. That's right. That's right. Your Honors, in conclusion, this is a sheriff's office. elected to follow certain policies and mandates that he ran his election on. This involves a Republican primary that was a very contested primary. It was with a former employee, a high-level employee of the sheriff's office. It was nasty. Mr. McCaffrey took a side. And when it came time to reappoint, under the principles of Elrod, Branty, Jenkins, and Bozzarelli, Sheriff Chapman had every right, every right to not reappoint Mr. McCaffrey. And he relied, Sheriff Chapman relied on the precedence of this court to make that decision. And we just ask that you maintain the precedent in this course and not reverse those previous cases. Because there's good principles and good reasons why. It's hard enough to run a sheriff's office in Virginia, which has many political aspects to it, when you have a lead investigator who makes some of the allegations, makes some of the name-calling and other things that are in this complaint, and then has to deal with the commonwealth's attorney, the medical examiner. Even in his own complaint, he says that he gets to devote what resources are needed for specific investigations. He mentioned that in one of the lead crimes that he investigated. This is exactly why Jenkins and Bozzarelli say that if you're an elected official, the public's mandate is supposed to be followed, and a sheriff, in making sure that that happens, can make political patronage decisions to not reappoint or terminate folks that clearly oppose him and oppose his policies. Thank you, sir. Thank you. Mr. Sinker? I've had several different points based on our exchange that I'd like to address. First of all, I want to remind the Court respectfully that we are here on a 12B6 motion, and I would suggest that much of the factual scenarios, Judge Wilkinson, that you and I have been talking about, are really kind of beyond the pale here, because you do have to take this complaint and the facts there alleged. And there's no evidence anywhere that Mr. McCaffrey undermined in any way any professional law enforcement action that he took. And so, now, it may be that my colleague wants to develop that case, but that's not here. But the law doesn't say that. The law doesn't say the Elwod Branty cases and the Four Circuit cases doesn't say you have to show that the terminated deputy has been disruptive. They just show – don't they just hold that the activity is such that it justifies or allows the employee to be terminated? I mean, otherwise, you would never have 12B6 cases. No, it's actually, Your Honor, I think you're close but not precise. And that is that you don't have to have actual disruption, but you have to have a reasonable likelihood of disruption. If that's not present here, then when would it ever be? Well, it's not present here because you have a track record that even during this time period where Mr. McCaffrey took issue with how Sheriff Chapman was doing, he still was getting rave reviews. And if you recall the exchange after he was let go and Sheriff Chapman, this is in our complaint, talked to the prosecutors in the Braulio Castile case. And he said he thought that Mr. McCaffrey was a wonderful investigator, a good guy, and all that sort of thing. So I think that in looking at that, that you cannot just say theoretically there's a possibility of disruption. But if I may, Your Honor, I would like to return to one thing, Judge Quattlebaum, that you said also, and that is the point I was trying to make is you were focusing on the notion of sworn deputies. And part of what I think you have to do is look at this. You're supposed to look at the attributes of the particular position. I don't know of any sheriff's office that has the detailed general orders that this does, which constrains the meaning of sworn deputy without any constraints is not what we've got here. You have to drill down and see what responsibilities, what authorities they have. And the fact that a crime is complicated or that someone is experienced doesn't make the task of law enforcement political. That is the whole point. It's not supposed to be political. But given this record, politics would be infused in every decision that this individual made. And you cannot say that, Your Honor, in the context of the complaint. But the complaint doesn't – The complaint is right in front of me, and you're asking me to sort of just say that someone who has been hostile in every way imaginable suddenly turns into a good boy scout when he rejoins the office. If this were a Title VII claim and there was a question of reinstatement as an equitable remedy, no district judge in this circuit would grant reinstatement under these circumstances for many of the reasons we've talked about today. Your Honor, I would respectfully suggest that what you just said was filled with factual characterizations which don't reflect this. The fact that he was an experienced investigator of significant crimes is not political. When does the investigation – It shouldn't be, and that's part of the problem here. But the point is that – It is. Where? But that's a fact you were just saying, and you, Your Honor, respectfully cannot interject that fact into this case where we are in 12b-6. You didn't read the complaint. The complaint does – You didn't read the complaint. I wrote the complaint. It did not say that. You wasted yourself on your own fatard. I don't believe that's true at all, Your Honor. Your Honor, let me point – let me talk about something we haven't talked about much, and that is on the pickering side of things. And the reason why I want to talk about that is because you, Your Honor, yourself, have written opinions talking about how particularly that misconduct in law enforcement is something that needs to be disclosed. So as I step back and hear what you have, how you all have been questioning me, there's a conundrum. Your Honor, if I could just finish this point. I don't have a problem with that. What we're talking about here is the fact that there was nothing about the office, the way it was organized, the way the gangs unit was organized, the way the budget was run, everything about it, whether it be a policy decision or whether it be an administrative decision, this individual opposed. And I couldn't agree more with the statement that law enforcement is supposed to be nonpolitical. It absolutely should be. And this politicizes it. This politicizes it. This goes in exactly the opposite direction. And all that is on top of Jenkins, which is my fundamental point, because the question here is when you get a case that's much less sympathetic than Jenkins, because we deal with far more than an ordinary patrolman, the case question is, are we going to follow this court's precedent or are we going to just chuck it overboard? Two points, Your Honor. First of all, with respect to Jenkins, the court's precedent is you have to look at the particular position. And I would respectfully suggest that the structure that has been uniquely imposed here advances the concerns that you're talking about, because it, number one, limits the people who could be political decision makers. But more importantly, because of the structure of supervision, which we have set out in our briefs and we've submitted the general orders, is that that kind of fifth column. Were there general orders like that in the Jenkins case? No, Your Honor. There's nothing like this. But what that does is, practically speaking, it focuses on the issues of insubordination, which I think what you're talking about when you talk about a fifth column. And the Supreme Court has been very cautious to say that the whole Elrod Branty analysis is not supposed to be a substitute for normal insubordination. There is a rigorous system of supervision here which prevents people from being insubordinate. But the point that there is a political that — let me just ask you this, Your Honor. This is a question I would respectfully ask you to think about here. Because if you're a government employee and the material, the allegations that are a complaint are honestly felt, genuinely meant. And you can say it's political, but you say that in a tone as if that's bad. But if Sheriff Chapman really has done these things, he is a bad man and should not be sheriff of Loudoun County. So you have a person, an insider, who, in all the cases talked about, that the public hears about misconduct from insiders. So this man did the right thing. This isn't just about misconduct. There's an acidity and a toxicity to this whole business that goes far beyond normal political opposition. If Sheriff Chapman is that acidic, if he's the source of those activities, this is fair. But the point being is that we're not here after a trial. This is a 12B6 motion. That's what Jenkins was. But we have more facts here that we have alleged. Yes, and they're not favorable to you. They are, Your Honor. They are. Anyway, I've exceeded my time. Thank you, Your Honors. I appreciate it. Thank you. We'll come down and re-counsel and take a brief recess.
judges: J. Harvie Wilkinson III, Robert B. King, A. Marvin Quattlebaum Jr.